UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-10010-CR-MOORE/SNOW

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

LIAN IBANEZ-MOLINA,

     Defendant.



FILED BY_____ D.C.

OCT 2 5 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## <u>REPORT AND RECOMMENDATION</u>

     THIS CAUSE is before the Court on the Defendant's Motion to Suppress Any and All Evidence Obtained as a Result of the Search of Data/Information Copied from the Defendant's Cellular Telephone and Any and All Evidence Derived Therefrom in Violation of the Fourth Amendment to the United States Constitution and Request for Evidentiary Hearing (ECF No. 25), and Defendant's Motion to Suppress Any and All Evidence Obtained as a Result of the Search of Data/Information Copied from the Defendant's Cellular Telephone Pursuant to the Amended Search Warrant Issued on October 7, 2024 and Motion to Strike Amended Search Warrant Issued on October 7, 2024 and Request for *Franks* Hearing and Evidentiary Hearing upon Defendant's Motion to Suppress (ECF No. 31) which were referred to United States Magistrate Judge, Lurana S. Snow, for Report and Recommendation.

     The Government filed a Response in opposition to the initial Motion to Suppress (ECF No. 29) and the Defendant filed a Reply to that Response (ECF No. 30). The Government also responded to the second Motion to Suppress. (ECF No. 35) At the request of the undersigned, the Government also filed into the record

copies of the search warrants which are the subject of the instant motions. (ECF No. 33-1 - 33-3)

The Defendant is charged by indictment with encouraging aliens to enter the United States unlawfully, in violation of 8 U.S.C. § 1324(a)(1)(A)(5)(I). At issue in the present Motions is the admissibility of evidence seized from a cellular telephone found in the Defendant's possession at the time of his state arrest for burglary on April 20, 2022. Three search warrants were issued in connection with that phone: (1) a state search warrant issued on May 3, 2022, authorizing the search and seizure evidence pertaining to burglary and grand theft; (2) a federal search warrant issued by United States Magistrate Judge Jonathan Goodman on April 17, 2024, authorizing the search and seizure of evidence pertaining to the instant alien smuggling case, and (3) an amended search warrant issued by Judge Goodman on October 7, 2024.

In his first Motion to Suppress, the Defendant seeks to exclude evidence obtained by federal agents pursuant to the initial federal search warrant because it contained false information material to Judge Goodman's finding of probable cause. The Defendant also argues that the first federal warrant was invalid because the federal agents reviewed evidence extracted from his phone prior to applying for the warrant, and that both federal warrants are invalid because they were obtained after unreasonable delay.

The second Motion to Suppress focuses on the Amended Search Warrant. The Defendant argues that the Amended Search Warrant was invalid and should be stricken and because it was obtained after the search of the phone already had been executed and because it lacked sufficient probable cause. In a Supplement to the two Motions to Supress (ECF No. 34), the Defendant further

argues that the state search warrant was invalid because it lacked sufficient probable cause, contained erroneous information pertaining to the owner of the cell phone and was over broad.[1]

The Government responds that the alien smuggling evidence discovered during the execution of the state search warrant was properly seized because it was in plain view; the evidence was not viewed by federal agents until the federal search warrant was obtained; the false evidence in the initial search warrant affidavit was  the result of mistake and a <u>Franks</u> hearing is not required; the false evidence was not necessary to a finding of probable cause; the federal search warrants should not be invalidated based on the delay in requesting them, and the amended search warrant was properly issued. An evidentiary hearing on the Motions was conducted by the undersigned on October 22, 2024.

<h2 style="text-align:center">I. <u>FACTS PRESENTED</u></h2>

A. <u>Hearing Testimony</u>

1. <u>HSI Special Agent Jamie Haniff</u>

The Government called as its first witness Homeland Security Investigations (HSI) Agent Jamie Haniff.  Agent Haniff stated that he has been employed as an agent with HSI since 2009, prior to which he had been an inspector with the United States Customs Service.  The agent related that on March 10, 2022, he was notified by the United States Coast Guard (USCG) that a vessel had been interdicted while inbound from Cuba.  Onboard the vessel were several individuals with no status in the United States.  These individuals were repatriated, while the

---

[1] The Defendant also asserts that there are chain of custody problems related to this evidence (ECF No. 20 at 7), but this argument is more properly raised in a motion *in limine* or at the time the evidence is offered at trial, and will not be addressed in this Report.

two vessel operators, Leonet Gonzalez and Edel Reyes Arteaga were brought in for questioning.

At the time of his arrest, Gonzalez had in his possession a boat rental agreement, one page in length, listing the Defendant as the boat owner. (A notarized copy of this agreement was introduced into evidence as Government's Exhibit D.) The agreement was for the period of March 3, 2022 at 9:00 AM through March 10, 2022 at 4:00 PM. Agent Haniff stated that this type of simple rental agreement commonly was used by smugglers in 2022 to conceal the involvement of vessel owners. He explained that legitimate boat rental agreements are much longer and more detailed, including such things as waivers of liability and hold harmless clauses, as well as copies of driver's licenses and credit cards and invoices. Additionally, Agent Haniff noted that the rental agreement in this case contained mathematical errors.

The agent testified that Gonzalez and Arteaga were detained at the time of interdiction. Hours later, on the morning of March 11, 2022, the Defendant called the USCG to inquire about the vessel. This aroused Agent Haniff's suspicion because it suggested that the Defendant had been alerted to the vessel's location by a tracking device, which also would have allowed the Defendant to monitor the course of the smuggling operation. Moreover, the Defendant's call took place several hours before 4:00 PM, the time the lease would have expired.

On March 18, 2022, the vessel was transferred by a contractor to Miami for storage. The contractor relayed that he had been followed en route from Florida City to Miami. When the contractor arrived in Miami, a Miami Police Department officer was there to investigate a possible stolen vessel. Subsequent investigation revealed that the Defendant had filed a stolen vessel report in Palm

4

Springs, Florida, despite having spoken to the USCG regarding their possession of the vessel. The Defendant had provided to the Palm Springs Police Department a copy of the boat rental agreement. This copy was identical to the one that had been found in Gonzalez' possession, but the Defendant's copy had been notarized by the mother of his girlfriend.

In late March, 2022, Palm Beach County Sheriff's Office (PBSO) Detective Michael Gruber contacted HSI after learning that the Defendant was a person of interest in the federal investigation, as the Defendant also was a suspect in a burglary that Detective Gruber was investigating. Agent Haniff and Detective Gruber communicated by phone and email, and Detective Gruber was made aware of the Defendant's suspected involvement in the March 10, 2022 smuggling incident in the Florida Keys. (The emails between Agent Haniff and Detective Gruber are contained in Defendant's Exibit 1, in evidence.)

Agent Haniff testified that Detective Gruber again contacted him following the Defendant's arrest for a different burglary (involving vessel parts) on April 30, 2022. Subsequently Detective Gruber obtained a state search warrant for the Defendant's cell phone. The detective notified Agent Haniff that there were photos on the Defendant's phone which might relate to Agent Haniff's case.

In late August 2022, Agent Haniff received from Detective Gruber a thumb drive containing all of the information which had been extracted from the Defendant's phone. Agent Haniff segregated the information which pertained to the dates surrounding the alien smuggling case involving Gonzalez and Arteaga. A review of that information, specifically photographs and conversations a between the Defendant and his girlfriend and between the Defendant and an unknown individual whose phone number was saved under the name "Bote Gato," which were

on the application "What'sApp" confirmed that the phone contained evidence which did in fact relate to Agent Haniff's case. Agent Haniff translated these conversations and reproduced them in a Report of Investigation (ROI) dated February 27, 2024. (Government's Exhibit E) Agent Haniff stated that it took him two to three days to complete the translation for inclusion in his report.

The agent testified that Gonzalez and Arteaga were indicted federally for alien smuggling. Both had been interviewed and neither had implicated the Defendant in the smuggling venture. Subsequently Gonzalez was shot and killed by Cuban authorities in an unrelated smuggling attempt and the case against him was dismissed. Arteaga became a fugitive and was not apprehended until September 2023. Arteaga later was convicted after a guilty plea, and Agent Haniff turned his attention to the Defendant. By that time, a new prosecutor, Special Assistant United States Attorney (SAUSA) Steve Sarkees had been assigned to the case.

SAUSA Sarkees determined that a federal search warrant would be required to access the information that had been extracted from the Defendant's cell phone pursuant to the state warrant. An application for a search warrant was presented to United States Magistrate Judge Jonathan Goodman in April 2024. Agent Haniff acknowledged that some information contained in the affidavit in support of the search warrant that he swore to and signed was false. Specifically, a statement in paragraphs 15 that Gonzalez had been convicted in the federal case; a statement in paragraph 18 that the Defendant had communicated with Gonzalez on What'sApp, and a statement in paragraph 23 that the Defendant had communicated with Arteaga, were untrue. However, the agent testified that these false statements were not contained in the draft affidavit which he had prepared

and submitted to SAUSA Sarkees.  He explained that he was given only the signature page of the affidavit to sign during his phone call with Judge Goodman.

Agent Haniff related that SAUSA Sarkees had prepared the initial draft affidavit, which he then emailed to the agent.  Agent Haniff made revisions to the draft, and emailed the revised draft to SAUSA Sarkees.  The agent assumed that he had signed the signature page of his own revised draft affidavit. Agent Haniff added that he had retained these emails,  and the undersigned directed the Government to produce the emails and the attached drafts.  These were received into evidence as Government's Exhibits F (containing SAUSA Sarkees' first draft) and G (containing Agent Haniff's revised draft).

After reviewing his revised affidavit, Agent Haniff confirmed that the incorrect statements were not contained therein.  He also acknowledged that the affidavit which was presented to Judge Goodman in support of the initial federal search warrant was substantially different from the agent's revised draft (Exhibit G) and contained information that had not been in his draft or  SAUSA's draft (Exhibit F), which were the only drafts the agent had seen prior to presenting his application to Judge Goodman.  Agent Haniff does not know who prepared the affidavit which he had signed without having read it. The agent also testified that no return had been made on the warrant because he had not gotten around to it.

Agent Haniff stated that the search he conducted of the material extracted from the Defendant's phone pursuant to the first federal search warrant was the same as the translated conversations contained in his February 2024 report.  However, when counsel for the Defendant advised the Government of the false statements contained in the affidavit in support of the first federal warrant, an application for an Amended Search Warrant (which corrected the errors in

paragraphs 18 and 23) was presented to Judge Goodman, who signed it on October 7, 2024.  Agent Haniff testified that the search conducted pursuant to the Amended Search Warrant revealed voice calls pertaining to a smuggling venture that had not been found pursuant to the initial federal search.

 Regarding the delay  from the time he received the thumb drive from PBSO (around late August 2022) and the time he obtained the first federal search warrant (April 17, 2024), Agent Haniff explained that the usual procedure is to begin with prosecuting the boat operators, and then to focus on the vessel owner and other possible organizers.  This case was unusual because Gonzalez had been killed and Arteaga remained a fugitive until September 2023.  Once Arteaga was convicted, Agent Haniff turned his attention to the Defendant.  He added that this case was one of many he was working on at the time.

  2. <u>PBSO Detective Michael Gruber</u>

 Detective Gruber testified that he has been employed by PBSO for fifteen years and has been a detective for the past three years.  He stated that he was involved in the investigation of a burglary committed on February 10, 2022 which involved the theft of a camper and boat motor from a business.  The Defendant was connected to that offense because his truck was identified by a license plate reader in the vicinity of the burglary.  After conducting a computer search, Detective Gruber learned that the Department of Homeland Security (DHS) also had a case involving the Defendant.  Detective Gruber got in touch with Agent Haniff and advised him of the state burglary investigation, while Agent Haniff told him about the federal smuggling case.

 In April 2022, the Defendant's truck again was identified as being connected with another burglary.  Since the Defendant told officers that no one

other than himself was permitted to drive his truck, he was placed under arrest for the second burglary.  The Defendant's cell phone was seized at the time of his arrest.

Detective Gruber applied for and obtained a search warrant which allowed him to extract all data from the phone and to search for evidence pertaining to the February and April burglaries.  The extraction was done by the PBSO computer crimes division, which downloaded the information onto a thumb drive which was delivered to Detective Gruber.  The detective searched the photo gallery and messaging applications for evidence of the burglaries.  However, the messages were in Spanish, a language Detective Gruber did not know.  He did find one photo which related to his case and was usable as evidence.

During the course of his search, Detective Gruber located a few Google map photos contained in What'sApp messages, which appeared to depict Cuba and the Lower Keys.  (Government's Exhibits H and I)  Although Detective Gruber could not read the wording on the photos, he thought they might relate to Agent Haniff's case.  Detective Gruber turned over to Agent Haniff the same thumb drive the detective had received from the computer crimes division, which contained all of the data on the Defendant's phone.

On cross examination, Detective Gruber acknowledged that in two instances, the state application and search warrant identifies the owner of the cell phone is identified as "Schuler,"  although the Defendant was correctly identified as the owner nineteen times.   The detective conceded that the mentions of "Schuler" were erroneous, explaining that the state uses a template for drafting applications and warrants and the Schuler name likely was from a prior warrant and was mistakenly included.  He added that his application had been reviewed by his

supervisor and the prosecutor and had been signed by the judge, none of whom had caught the errors.

B. <u>Search Warrants</u>

   1. <u>State Warrant Issued on May 3, 2022</u>

      On this date, 15th Judicial Circuit Judge Glenn Kelley issued a search warrant for the Defendant's cellular telephone authorizing agents to seize data from the phone pertaining to burglaries and grand theft allegedly committed by the Defendant on February 10 and April 30, 2022. (ECF No. 33-3 at 1-11) The application focused on the fact that the Defendant's truck had been identified in the immediate vicinity of each of the burglaries, and that the Defendant had insisted that no one had permission to drive his truck and he had not loaned the truck to anyone. Additionally, in connection with the first burglary, a light skinned male was observed exiting the truck  and walking to the lot where the burglary occurred. A van then entered and later exited the lot.  Thereafter, the same light skinned male left the lot and departed in the truck.  Regarding the second burglary, which involved the theft of a boat, the Defendant was the only occupant of the truck at the time the offense was committed.  <u>Id.</u> at 3-6.

      The state warrant authorized Palm Beach County Sheriff's officers to search for and seize information which constituted evidence relevant to proving the offenses of burglary, grand theft (motor vehicle) and grand theft (more than $10,000 and less than $20,000), consisting of:

        1. Call logs, to include incoming, outgoing and missed calls.

        2. Phonebook and contacts to include phone numbers, and e-mail addresses.

        3. SMS/MMS messages and attached multimedia files, to include incoming and outgoing.

4. Secondary SMS applications and messages to include KIK, TextPlus, TextMe and others.

5. E-mails to include incoming and outgoing.

6. Internet history, bookmarks, suspended state websites, search terms, Cookies and all saved storage information from the internet website.

7. Pictures and all ExIF information to include geotagging information (GPS location of the picture).

8. Videos and geotagging information.

9. Audio files to include any voicemail stored on the device and voice notes.

10. Secondary phone number accounts such as Skype, Line 2 and other applications that can a assign a second roaming phone number.

11. WiFi network information, to include SSID (Network name) and GPS information of the network.

12. GPS directions to include turn by turn route guidance.

13. Calendar information, including sync'd calendars.

14. And any account information, content, setting, and saved usage information for any and all installed applications, also known as "apps" on the device.

15. All other data stored within the cellular device.

16, Any and all Google Accounts/Information (Gmail, Google Voice, Google search engine, VoIP, IM Chat).

(ECF No. 33-3 at 10)

2. Federal Warrant Issued on April 17, 2024

This warrant was issued by United States Magistrate Judge Jonathan Goodman based on the application and affidavit of HSI Special Agent Jamie Haniff, authorizing the search of the Defendant's phone for evidence of alien smuggling activities occurring in and around March 10, 2022. (ECF No. 33-1) Agent Haniff's

affidavit begins by outlining the burglary allegedly committed by the Defendant and the state search warrant which followed. Id. at 4. The affidavit goes on to state:

> On July 14, 2022, PBSO conducted a digital forensic examination of [the Defendant's cell phone. A PBSO Detective Gruber determined during his review that the TARGET DEVICE included evidence related to maritime human smuggling in the Florida Keys, including specifically Whats App conversations. PBSO Detective Gruber determined that the information included in the chats related to Case No. 22-10010-CR-KING/DAMIAN (*UNITED STATES v. ARTEAGA*). Upon completion of the PBSO's state investigation, Detective Gruber provided a thumb drive containing the digital forensic extraction of the cellphone which contained the previously mentioned evidence to HSI.

Id. at 5.

Agent Haniff's affidavit avers that on March 10, 2022, based on a duty call from the United States Coast Guard, a vessel owned by the Defendant was followed from an area off the north coast of Cuba to a location approximately 24 nautical miles south of Key West, Florida. Onboard the vessel were 16 Cuban nationals who were not authorized to enter the United States and who subsequently were repatriated to Cuba. Operating the vessel were Leonet Gonzalez and Edel Reyes Arteaga, who were charged with alien smuggling in Case No. 22-10010-CR-KING. Id., at 5-6.

Agent Haniff's affidavit continues by stating that at the time of his arrest, Gonzalez had in his possession a rental agreement dated March 2, 2022. The agreement was not notarized. Agent Haniff averred that based on his training and experience, "the creation of boat rental agreements are a tactic used by alien smuggling organizations to help conceal criminal involvement of vessel owners." Id. at 6. On March 11, 2022, hours after the interdiction of his vessel, the Defendant called the Coast Guard from his cell phone to inquire about the vessel. Nevertheless, on March 13, 2022, the Defendant reported to the Palm Springs

Police Department that the vessel had been stolen.  The Defendant provided the police with a copy of the rental agreement that had been found in Gonzalez' possession, but which had been notarized by the Defendant's girlfriend.  Id. at 6.

Paragraph 15 of Agent Haniff's affidavit states that Arteaga and Gonzalez had been convicted after pleading guilty Id. Paragraph 18 of the affidavit avers:

> Law enforcement reviewed MOLINA's phone in connection with the Florida State case, and determined there were relevant communications between MOLINA and Gonzalez regarding possible violations of Title 8 U.S.C. § 1324 including photographs and text messages surrounding the trip to Cuba and back.  Law enforcement referred the possible violation to HSI, who began investigation and determined a connection to GONZALEZ and ARTEAGA. Id. at 6-7.

Additionally, paragraph 23 of  affidavit recites:

> Given that the TARGET DEVICE was the only device in MOLINA's possession at the time of his arrest, MOLINA used the phone to communicate with ARTEAGA, and used the phone to call and report his vessel stolen, it is likely that the TARGET DEVICE will contain evidence of the TARGET OFFENSES. Id. at 8.

The search warrant authorized federal agents to search for evidence of the Defendant's involvement in violations of 8 U.S.C. § 1324.  It does not limit the search to evidence pertaining to the interdiction of his vessel on March 10, 2022.

3. Federal Search Warrant Issued on October 7, 2024

Judge Goodman issued an Amended Search warrant (ECF No. 33-2), pursuant to an affidavit which contained changes to paragraphs 18 and 23, omitting statements that the Defendant had communicated directly with Gonzalez and Arteaga, as follows:

13

18. Law enforcement reviewed MOLINA's phone in connection with the Florida State case, and determined that there were relevant communications between MOLINA and an individual unknown to law enforcement ("Individual 1") regarding possible violations of 8 U.S.C. § 1324 including photographs and text messages surrounding the trip to Cuba and back. Law enforcement referred the possible violation to HSI, who began investigation and determined a connection to the smuggling venture undertaken by Gonzalez and Arteaga.

\* \* \* \*

23. Given that the TARGET DEVICE was the only device in MOLINA's possession at the time of his arrest, that MOLINA used the phone to communicate with Individual 1 about the smuggling venture undertaken by Arteaga and Gonzalez, and that he used the phone to call and report his vessel stolen, it is likely that the TARGET DEVICE will contain evidence of the TARGET OFFENSES. Id. at 7-8.

In footnote 2 to paragraph 18, the affiant states:

The previous Search Warrant Affidavit mistakenly stated that MOLINA had communicated with Gonzalez (paragraph 18) and Arteaga (paragraph 23) about the smuggling venture. As set forth in this Amended Affidavit, MOLINA actually communicated with Individual 1 about the smuggling venture. Id. at 8, n.2.

In another footnote, the affidavit states, in pertinent part:

The Honorable Jonathan Goodman authorized a previous version of this search warrant. . . . The United States files this Amended Application for a Search Warrant to address an error in the original Search Warrant Affidavit . . . . The error resulted from the AUSA making edits to the affidavit, unbeknownst to the affiant, which were consequently not reviewed by the affiant prior to execution of the warrant. The United States avers that this error does not affect the probable cause supporting the Amended Search Warrant. . . . Id. at 3, n.1

The Amended Search Warrant was not issued *nunc pro tunc* to the date of the initial warrant, and authorized the search to be conducted on or before October 21, 2024. Id. at 17.

## II. DISCUSSION

### A. Law Applicable to the Review of Search Warrants

In Illinois v. Gates, 462 U.S. 213, 238 (1983), the Supreme Court held that in issuing a search warrant, the task of a judge or magistrate is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." In so holding, the Court recognized that search warrant affidavits "'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no place in this area.'" Id. at 235, quoting United States v. Ventresca, 380 U.S. 102, 108 (1965).adswq1

Review of the conduct of the police in obtaining and executing the search warrant for the defendant's residence is controlled by United States v. Leon, 468 U.S. 897 (1984). In creating what has been called a "good faith exception" to the exclusionary rule, the Court recognized that the rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved'". Id. at 906, quoting United States v. Calandra, 414 U.S. 338, 348 (1974). The Court noted that the articulated purpose of the exclusionary rule never had been to punish the errors of judges and magistrates, and there is no evidence to suggest that judges or magistrates are inclined to ignore or subvert the Fourth Amendment or that "exclusion of evidence seized pursuant to a warrant will have a

15

significant deterrent effect on the issuing judge or magistrate." <u>Leon</u>, 468 U.S. at 916.  Accordingly, the Court concluded that "suppression of evidence seized pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule". <u>Id.</u> at 918.

The Court noted that in an ordinary case, a police officer cannot be expected to question a magistrate's probable cause determination or judgment that the form of the warrant is technically correct.  However, suppression of evidence seized pursuant to a warrant still might be proper in those rare instances where the officer has no reasonable grounds for believing that the warrant was properly issued. <u>Id.</u> at 921-923.  Therefore, the Court recognized four situations where a finding of good faith reliance would not be appropriate:

1.  Where the magistrate or judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, as discussed in <u>Franks v. Delaware</u>, 438 U.S. 154 (1978);

2.  Where the issuing magistrate wholly abandoned his or her judicial role and becomes a "rubber stamp" for the police, as in <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319 (1979);

3.  Where the warrant is based on an affidavit that is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, as in <u>Brown v. Illinois</u>, 422 U.S. 590, 610-611 (1975); and

4.  Where a warrant is so facially deficient, as where it fails to particularize the place to be searched or the items to be seized, that the executing officers cannot reasonably presume it to be valid. <u>Leon</u>, 468 U.S. at 923.

## B. State Search Warrant

The Defendant first contends that the state search warrant lacked probable cause, contained false information and was overly broad.  Therefore, the Defendant argues, evidence seized pursuant to that warrant, which led to the issuance of the federal warrants, should be suppressed as fruit of the poisonous tree.

### 1. Probable Cause

As noted above, according to the good faith exception to the exclusionary rule, evidence seized pursuant to a search warrant will not be suppressed unless one of the exceptions delineated in Leon applies.  In the instant case, the Defendant has not identified any of the Leon exceptions as applicable.  Moreover, the application submitted in support of the state search warrant established that there was a fair probability that evidence of the offenses of burglary and grand theft would be contained on the Defendant's phone.  Gates, 462 U.S. at 238.  Accordingly, the state warrant is presumed valid.

### 2. False Information

The Defendant next argues that the state warrant was invalid because the application contained false information in the form of two references to the owner of the cell phone as "Schuler."  This argument is based on the first of the Leon exceptions.  In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court established the procedures to be utilized where a defendant challenges the truthfulness of averments in an affidavit used to procure a search warrant:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a

17

> hearing be held at the defendant's request.  In the event
> that at that hearing the allegation of perjury or reckless
> disregard is established by the defendant by a
> preponderance of the evidence, and with the affidavit's
> false material set to one side, the affidavit's remaining
> content is insufficient to establish probable cause, the
> search warrant must be voided . . .

Id. at 155-156.  Allegations that the statements of the affiant were merely negligent or the result of innocent mistake are insufficient, and the deliberate falsity or reckless disregard must be directed toward the affiant, not toward an informant whose statements are contained in the affidavit.  Id.

Here the Defendant has made no substantial preliminary showing that the affiant on the state search warrant, Detective Gruber, deliberately used the wrong name for the cell phone owner in two places or that these errors were the result of reckless disregard for the truth.  Therefore, no Franks hearing was warranted.  Moreover, in light of the far more numerous identifications of the Defendant as the owner of the cell phone, the errors were immaterial to the judge's finding of probable cause, and suppression is not required on this ground.

3. Over Breadth

Finally, the Defendant asserts that the state search warrant should be invalidated as overly broad.  As detailed above, the state search warrant in the instant case authorized an extensive search of virtually all areas of the Defendant's cell phone, but limited that search to evidence pertaining to the offenses of burglary and grand larceny.  In addition, the application and search warrant specifically reference burglaries and thefts occurring in February and April 2022.

The good faith exception assumes that "the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant."  Leon, supra at 918 n.9.  Absent

18

a showing of a flagrant disregard for the limitations of the warrant, however, the items properly seized will not be suppressed. United States v. Heldt, 668 F.2d 1238, 1259 (D.C. Cir. 1981); United States v. Whitten, 706 F.2d 1000, 1010 (9th Cir. 1983). In light of the state warrant's limitation of the search to evidence of burglary and grand theft, the state search warrant should not be invalidated as overly broad.

## C. First Federal Search Warrant (April 17, 2024)

### 1. Timing of the Search

The Defendant argues that Agent Haniff conducted a search of the thumb drive, which contained all of the data on the Defendant's cell phone, prior to obtaining the first federal warrant. As noted above, the affidavit in support of the first federal warrant states:

> On July 14, 2022, PBSO conducted a digital forensic examination of [the Defendant's cell phone. A PBSO Detective Gruber determined included evidence related to maritime human smuggling in the Florida Keys, including specifically Whats App conversations. PBSO Detective Gruber determined that the information included in the chats related to Case No. 22-10010-CR-KING/DAMIAN (*UNITED STATES v. ARTEAGA*). Upon completion of the PBSO's state investigation, Detective Gruber provided a thumb drive containing the digital forensic extraction of the cellphone which contained the previously mentioned evidence to HSI. (ECF No. 33-1 at 5)

This statement is both misleading and partially false. Detective Gruber found only a few map photos which could have some bearing on Agent Haniff's case, and was unable to read any of the What'sApp conversations. He did not determine that any evidence related to the case against Gonzalez and Arteaga that was pending before Judge King. The statement is misleading because it suggests that Detective Gruber provided only the evidence pertaining to maritime human smuggling, not the entire contents of the Defendant's phone.

Similarly, paragraph 18 of the affidavit in support of the first federal warrant stated:

> Law enforcement reviewed MOLINA's phone in
> connection with the Florida State case, and determined
> there were relevant communications between MOLINA
> and Gonzalez regarding possible violations of Title 8
> U.S.C. § 1324 including photographs and text messages
> surrounding the trip to Cuba and back.  Law enforcement
> referred the possible violation to HSI, who began
> investigation and determined a connection to GONZALEZ
> and ARTEAGA. Id. at 6-7.

Putting aside for the moment the false references to Molina and
Arteaga, this paragraph does not identify which "law enforcement" reviewed the
phone information.  It can be inferred only that it was an agency other than HSI,
since the information subsequently was referred HSI.  The paragraph is misleading
because it refers to "photographs and text messages," when Detective Gruber
testified that he noticed only a few photos of maps of Cuba of the Lower Keys
contained within some What'sApp messages.  Since Detective Gruber did not
understand Spanish, he could not characterize the text messages themselves as
communications between the Defendant and one or more co-conspirators.

The paragraph also is misleading because it states that HSI began an
investigation and determined a connection to Gonzalez and Arteaga.  Again putting
aside the mention of these names, the paragraph does not explain that the
investigation conducted by HSI was an examination and translation of the very text
messages which Detective Gruber could not read.  A reasonable inference from the
language of the paragraph would be that the investigation involved something
other than a painstaking review of the material for which Agent Haniff was seeking
court authorization to search.

Detective Gruber turned over to Agent Haniff the entire contents of the
Defendant's phone on the same thumb drive he received from his computer crimes
division.  The Government seeks to justify this action based on the doctrine of plain

20

view, which permits the warrantless seizure of an item where "(1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." United States v. Smith, 459 F.3d 1276, 1290 (11th Cir.2006) (citing Horton v. California, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)).

As detailed above, the state search warrant in the instant case authorized an extensive search of virtually all areas of the Defendant's cell phone, including his What'sApp messages, for evidence of the February 2022 and April 2022 burglaries. The alien smuggling venture involving Gonzalez and Arteaga took place in March 2022, between the two burglaries. Therefore, when executing the warrant, Detective Gruber was lawfully located in a place where the Defendant's messages and photos could be plainly viewed and he had a lawful right to access the messages.

The question, then, is whether the photos of maps of Cuba and the Lower Keys were incriminating and whether their incriminating character was immediately apparent. In and of themselves, such photographs are not incriminating. However, they arguably were evidence of the Defendant's knowledge of or involvement in the March 2022 smuggling venture that Agent Haniff was investigating and of which Detective Gruber was aware. Assuming *arguendo* that the incriminating character of these photos was immediately apparent to Detective Gruber, he then could lawfully turn the photos over to Agent Haniff.

But this is not what Detective Gruber did. He turned over to Agent Haniff a thumb drive containing all the data from the Defendant's phone. Agent Haniff then extracted from that data a series What'sApp messages from the time

period surrounding the March 2022 smuggling venture, translated those messages over a two to three-day time period, and included the messages in an ROI.  This constituted a warrantless search of the Defendant's cell phone.  See, United States v Hulscher, 2017 WL 657436 (D. S.Dk., February 17, 2017).  None of this was communicated to Judge Goodman in the affidavit supporting the first search warrant.

Moreover, Agent Haniff testified that the first federal search warrant did not result in the seizure of any information that was not included in Agent Haniff's report, and no return was made on that warrant.  A reasonable inference from this was that the federal search warrant was used to validate the warrantless search after the fact.  This inference is supported by the fact that a more extensive search was conducted pursuant to the Amended Search warrant, where voice calls were seized in addition to the What'sApp messages.

The undersigned finds that the omission of this information from the affidavit submitted to Judge Goodman in support of the first federal search warrant was material to the judge's finding of probable cause, and was made, at a minimum, with reckless disregard for the truth.  The Government has cited no case, and the undersigned is aware of none, that permits the Government to validate a warrantless search by obtaining a search warrant after the search is completed.  Therefore, the Defendant has established that the first exception under Leon, and the evidence seized pursuant to the warrant must be suppressed.

2. False Statements in Pargraphs 15, 18 and 23 of the Affidavit

The Government concedes that the statements in the affidavit that Gonzalez was convicted on the federal case (paragrpah 15), and that there was evidence that the Defendant had been communicating with Gonzalez and Arteaga

during the time of the federal offense (paragraphs 18 and 23), were false.  The
undersigned finds that the Government's decision to apply for an Amended Search
Warrant to correct some of the errors constitutes a sufficient basis for a Franks
hearing.

As noted earlier, a footnote to Agent Haniff's affidavit in support of the
Amended Search Warrant states:

> The error resulted from the AUSA making edits to the
> affidavit, unbeknownst to the affiant, which were
> consequently not reviewed by the affiant prior to
> execution of the warrant.

(ECF No. 33-2 at 2)

This statement is both misleading and false.  It implies that the edits
related solely to the false information contained in paragraphs 18 and 23
(paragraph 15, dealing with the conviction of Gonzalez, was not corrected in the
affidavit in support of the Amended Search Warrant).  In fact, the affidavit in
support of the first federal warrant was completely different from the draft Agent
Haniff assumed he was signing, and he was swearing blindly to an affidavit he had
not read.  Additionally, as we now know from the hearing testimony, there is no
evidence establishing who authored the affidavit in support of the first search
warrant.   While it may have been SAUSA Sarkees, there is nothing in the record
to support that supposition.

For purposes of Franks, there is no evidence to suggest that Agent
Haniff submitted an affidavit containing deliberately false statements.  Indeed, he
did not even know what was in the affidavit he signed, and the one he thought he
was signing did not contain the false statements.  In an ordinary case, omission of
the false statements contained in paragraphs 15, 18 and 23,  likely would not have
negated a finding of probable cause.  Nonetheless, the combined actions of the

Government agent and prosecutor clearly demonstrate a reckless disregard for the truth of the sworn testimony submitted to Judge Goodman.  Additionally, the fact that the agent was swearing to an affidavit he had not read and which contained statements he knew to be false clearly was material to Judge Goodman's finding of probable cause, and would have prevented his signing the warrant.  Therefore, the evidence seized pursuant to the first federal search warrant also should be suppressed on this ground.

   3. Delay in Applying for the Warrant

   The Defendant also argues that the delay between Agent Haniff's receipt of the thumb drive in August 2022 and the application for the first search warrant in April 2024 provides a basis to suppress the evidence seized pursuant to that warrant.  The reasonableness of any delay in conducting a search is determined in light of all the facts and circumstances, with a careful balancing of government and private interests.  United States v. Mitchell, 565 F.3d 1347, 1351 (11th Cir. 2009)  In United States v. Laist, 702 F.3d 608, 613-14 (11th Cir. ), it was noted that

> courts have identified several factors highly relevant to this inquiry: first, the significance of the interference with the person's possessory interest, see Mitchell, 565 F.3d at 1351; second, the duration of the delay, see Place, 462 U.S. at 709, 103 S.Ct. 2637 (characterizing the "brevity" of the seizure as "an important factor"); third, whether or not the person consented to the seizure, see United States v. Stabile, 633 F.3d 219, 235 (3d Cir.2011); and fourth, the government's legitimate interest in holding the property as evidence, see Burgard, 675 F.3d at 1033.

   In the instant case, it is significant that federal agents sought to search the contents of a thumb drive containing data from the Defendant's cell phone, not the phone itself.  The Defendant had no possessory interest in the thumb drive.  While Agent Haniff's justifications for the delay (the policy of completing the

24

case against the boat operators before turning to investigation of the Defendant, and the press of other cases) are not compelling, the Defendant has not alleged any prejudice resulting from the delay.  Balancing the Defendant's interests against those of the Government, the undersigned finds that the delay in obtaining the first warrant should not invalidate it.

D. Amended Federal Search Warrant (October 7, 2024)

The Defendant argues that the Amended Search Warrant was invalid and should be stricken and because it was obtained after the search of the phone already had been executed and because the affidavit supporting it lacked sufficient probable cause.  The Defendant also contends that the warrant should be invalidated because of delay.

As noted earlier in this Report, the undersigned is not aware of any authority for issuing a search warrant after a search already has taken place.  The Amended Search warrant authorized a new search with a return date of October 21, 2024 and was not made retroactive to the date of the first federal search warrant. Additional information in the form of voice calls was seized in connection with this new search.  Since it is very unusual for an order to be issued in conjunction with a search warrant, we do not know the legal basis on which Judge Goodman relied. According to the Government, Judge Goodman was informed of the basis for the Amended Warrant in the two footnotes (quoted earlier) in the affidavit.

In any event, as with the first federal search warrant, the affidavit in support of the Amended Search Warrant omits critical facts: (1) that Agent Haniff already had searched the thumb drive which contained all of the data from the Defendant's phone and had extracted pertinent conversations, which he translated and included in a ROI dated February 27, 2024 and (2) that Agent Haniff had not

reviewed the affidavit in support of the first federal warrant, which was substantially different from the draft had submitted, prior to swearing to the truth of its contents. Additionally, footnote 1 of the affidavit in support of the Amended Search Warrant falsely states that the affidavit had been edited by the AUSA, when in fact there is no evidence which identifies who was the author of that affidavit.

The undersigned concludes that if the omitted facts had been included in the affidavit in support of the Amended Search Warrant, there would have been insufficient probable cause to issue the warrant, and evidence seized pursuant to the Amended Warrant should be suppressed under the <u>Franks</u> exception to the exclusionary rule. Finally, for the reasons discussed above regarding delay in obtaining the Amended Warrant, the undersigned finds that suppression is not warranted as the result of delay.

### III. <u>CONCLUSION</u>

This Court having considered carefully the papers, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED as follows:

1. Defendant's Motion to Suppress Any and All Evidence Obtained as a Result of the Search of Data/Information Copied from the Defendant's Cellular Telephone and Any and All Evidence Derived Therefrom in Violation of the Fourth Amendment to the United States Constitution and Request for Evidentiary Hearing (ECF No. 25) be GRANTED, based on the omission of facts material to a finding of probable cause;

2. Defendant's Motion to Suppress Any and All Evidence Obtained as a Result of the Search of Data/Information Copied from the Defendant's Cellular Telephone Pursuant to the Amended Search Warrant Issued on October 7, 2024

(ECF No. 31) be GRANTED on the same ground and because a search had been completed prior to the issuance of the Amended Search Warrant, and

    3. Motion to Strike Amended Search Warrant Issued on October 7, 2024 (ECF No. 31) be DENIED as an improper remedy.

    The parties will have until October 30, 2024 in which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1.

    DONE AND SUBMITTED at Key West, Florida, this 25th day of October, 2024.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

All counsel of record

27