UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 4:24-cr-10010-KMM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LIAN IBANEZ-MOLINA,

    Defendant.
_____/

## ORDER ON REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Lian Ibanez Molina's ("Defendant") Motion to Suppress Any and All Evidence Obtained as a Result of the Search of Data/Information Copied from the Defendant's Cellular Telephone and Any and All Evidence Derived Therefrom in Violation of the Fourth Amendment to the United States Constitution and Request for Evidentiary Hearing (ECF No. 25), and Defendant's Motion to Suppress Any and All Evidence Obtained as a Result of the Search of Data/Information Copied from the Defendant's Cellular Telephone Pursuant to the Amended Search Warrant Issued on October 7, 2024 and Motion to Strike Amended Search Warrant Issued on October 7, 2024 and Request for *Franks* Hearing and Evidentiary Hearing upon Defendant's Motion to Suppress (ECF No. 31). The Government filed a Response in opposition to the initial Motion to Suppress (ECF No. 29) and the Defendant filed a Reply to that Response (ECF No. 30). The Government also responded to the second Motion to Suppress. (ECF No. 35). The matter was referred to the Honorable Lurana S. Snow, United States Magistrate Judge, who held an evidentiary hearing on the Motions on October 22, 2024. (ECF No. 37). On October 25, 2024, Magistrate Judge

Snow issued a Report and Recommendation on Defendant's Motions to Suppress, ("R&R") (ECF No. 43), recommending that each of Defendant's Motions to Suppress be GRANTED, and Defendant's Motion to Strike Amended Search Warrant Issued on October 7, 2024 be DENIED as an improper remedy. The Government filed timely objections to the R&R. ("Objs.") (ECF No. 50). Defendant filed his Response to Defendant's Objections to the R&R. ("Objs. Resp.") (ECF No. 53). The matter is now ripe for review. As set forth below, the R&R is ADOPTED.

I.   **BACKGROUND**

On June 21, 2024, the Government filed its one count indictment, charging Defendant with encouraging aliens to enter the United States unlawfully, in violation of 8 U.S.C. § 1324(a)(l)(A)(5)(I). Trial in this matter is set to begin on December 16, 2024.[1] (ECF No. 42).

Defendants' Motions concern the admissibility of evidence seized from a cellphone found in the possession of Defendant at the time of a state arrest for burglary on April 20, 2022. R&R at 2. Three search warrants were issued in connection with that phone: (1) a state search warrant issued on May 3, 2022, authorizing the search and seizure of evidence pertaining to burglary offenses; (2) a federal search warrant issued by United States Magistrate Judge Jonathan Goodman on April 17, 2024, authorizing the search and seizure of evidence regarding the instant case, and (3) an amended search warrant issued by Magistrate Judge Goodman on October 7, 2024. *Id.*

A.  **Evidentiary Hearing**

---

[1] This matter was first scheduled for trial during the two-week trial period beginning August 26, 2024 at 9:00 AM. (ECF No. 10). Trial has been continued multiple times. (ECF Nos. 18, 24, 42).

On October 22, 2024, Magistrate Judge Snow held an evidentiary hearing on the Motions to Suppress. (ECF No. 37). There, Magistrate Judge Snow heard the testimony of Homeland Security Investigations ("HSI") Agent Jamie Haniff ("Agent Haniff") and Palm Beach County Sheriff's Office ("PBSO") Detective Michael Gruber ("Detective Gruber"). R&R at 3, 8. The Court summarizes the testimony of Agent Haniff and Detective Gruber as set forth by Magistrate Judge Snow in the R&R.

Agent Haniff testified that on March 10, 2022, he was notified by the United States Coast Guard ("USCG") that a vessel had been interdicted while inbound from Cuba and onboard were several individuals with no status in the United States. R&R at 3. Such individuals were repatriated, while the vessel operators Leonet Gonzalez and Edel Reyes Arteaga were brought in for questioning. *Id.* at 4. Gonzalez had in his possession a one-page boat rental agreement, listing Defendant as the boat owner. *Id.* Agent Haniff testified that this type of simple rental agreement commonly was used by smugglers in 2022 to conceal the involvement of vessel owners. *Id.* He explained that genuine boat rental agreements are typically longer and more detailed. *Id.*

Agent Haniff testified that Gonzalez and Arteaga were detained, and hours later, Defendant called the USCG to inquire about the vessel, which signaled to Agent Haniff that Defendant was alerted to the vessel's location by a tracking device, allowing him to monitor a smuggling operation. *Id.* Further investigations revealed that Defendant had filed a stolen vessel report in Palm Beach, despite having contacted the USCG regarding their possession of the vessel. *Id.*

In March 2022, Detective Gruber was investigating Defendant as a suspect in a burglary and contacted HSI after learning that Defendant was a person of interest in the federal

investigation. *Id* at 5. Agent Haniff and Detective Gruber communicated by email and phone, and Detective Gruber learned of Defendant's suspected involvement in a smuggling incident. *Id.* Agent Haniff testified that Detective Gruber contacted him following Defendant's arrest for a separate burglary on April 30, 2022 and Detective Gruber subsequently obtained a state search warrant for Defendant's cellphone. *Id.* Detective Gruber alerted Agent Haniff that there were photos on Defendant's phone, which may be related to the federal smuggling case. *Id.*

In late August 2022, several months after Detective Gruber and Agent Haniff were initially in contact, Agent Haniff received from Detective Gruber a thumb drive containing all of the information extracted from Defendant's phone. *Id.* Agent Haniff then separated the information that related to the dates surrounding the federal smuggling case. *Id.* Agent Haniff reviewed the information, specifically photographs and conversations between Defendant and his girlfriend, and Defendant and an unknown individual on the "WhatsApp" application. *Id.* at 6. The conversations were in Spanish, which Agent Haniff translated and reproduced for a Report of Investigation ("ROI") dated February 27, 2024. *Id.*

Regarding Arteaga and Gonzalez, each were federally indicted for alien smuggling. *Id.* Gonzalez was subsequently killed by Cuban authorities in an unrelated smuggling attempt, and Arteaga became a fugitive and was later convicted after a guilty plea. *Id.* Turning his attention to Defendant, Agent Haniff was notified by Special Assistant United States Attorney (SAUSA) Steve Sarkees that a federal search warrant would be required to access the information that Agent Haniff had already extracted from Defendant's cellphone under the state search warrant. *Id.*

In April 2024, an application for a search warrant was presented to Magistrate Judge Jonathan Goodman. *Id.* Agent Haniff testified that some information contained in the affidavit

4

in support of the search warrant was false. *Id.* These false statements are: (1) a statement in paragraph 15 that Gonzalez had been convicted in the federal case; (2) a statement in paragraph 18 that the Defendant had communicated with Gonzalez on WhatsApp; and (3) a statement in paragraph 23 that the Defendant had communicated with Arteaga. *Id.* Agent Haniff testified that these statements were not contained in the draft affidavit, which he had prepared and submitted to SAUSA Sarkees, explaining that he was only given the signature page of the affidavit to sign during his phone call with Magistrate Judge Goodman. *Id.* at 7. Agent Haniff explained that SAUSA Sarkees prepared an initial draft, which Agent Haniff made revisions to and emailed back to SAUSA Sarkees, and assumed the affidavit he signed contained those revisions. *Id.* Agent Haniff testified that the affidavit presented to Magistrate Judge Goodman was substantially different from his revised draft. *Id.*

Agent Haniff stated that the search he conducted from Defendant's cellphone pursuant to the first federal search warrant was the same as the translated conversations contained in his February 2024 ROI when the thumb drive was turned over from Detective Gruber. *Id.* When counsel for Defendant advised the Government of the false statements contained in the affidavit in support of the first federal warrant, the Government presented an application for an Amended Search Warrant (correcting the errors in paragraphs 18 and 23) to Magistrate Judge Goodman, who signed it on October 7, 2024. *Id.* at 8. Agent Haniff testified that the search conducted pursuant to the Amended Search Warrant revealed voice calls regarding a smuggling venture, which were not discovered pursuant to the initial federal search. *Id.*

Magistrate Judge Snow then heard testimony from Detective Gruber. *Id.* He stated that he was involved in the investigation of a burglary of vessel parts committed on February 10, 2022. *Id.* Defendant was connected to the burglary offense and after conducting a computer

5

search, Detective Gruber learned that the DHS also had a case involving Defendant, which led to Detective Gruber's discussions with Agent Haniff regarding the federal smuggling case. *Id.*

Defendant was subsequently arrested regarding another burglary and his phone was seized at the time of the arrest. *Id.* at 9. Detective Gruber applied for and obtained a search warrant, which enabled him to extract all data from the cellphone and to search evidence related to the burglaries. *Id.* During his search, Detective Gruber located a few Google Maps photos contained in WhatsApp messages, which appeared to depict Cuba and the Florida Keys. *Id.* Detective Gruber cannot speak Spanish and could not read the wording in the photographs or messages, but thought they might relate to Agent Haniff's federal smuggling case. *Id.* Detective Gruber then turned over to Agent Haniff the thumb drive he had received, which contained all data on Defendant's cellphone. *Id.*

### B. Magistrate Judge Snow's R&R

In Defendant's first Motion to Suppress, he seeks to exclude evidence obtained by federal agents pursuant to the initial federal search warrant because it contained false information material to Magistrate Judge Goodman's finding of probable cause. *See generally* (ECF No. 25). The Defendant also argues that the first federal warrant was invalid because Agent Haniff reviewed evidence extracted from his phone prior to applying for the warrant, and that both federal warrants are invalid because they were obtained after unreasonable delay. *Id.*

In Defendant's second Motion to Suppress, he argues that the Amended Search Warrant was also invalid and should be stricken because it was obtained after the search of the phone had already been executed and because it lacked sufficient probable cause. *See generally* (ECF No. 31). In a Supplement to the two Motions to Suppress, Defendant further argues that the state search warrant was invalid because it lacked sufficient probable cause, contained

erroneous information pertaining to the owner of the phone, and was overbroad. *See generally* (ECF No. 34). As set forth in the R&R, Magistrate Judge Snow made the following findings.

      i.      *State Search Warrant Issued on May 3, 2022*

Magistrate Judge Snow first found that the state search warrant issued on May 3, 2022 was valid. *Id.* at 17. Specifically, Magistrate Judge Snow found that (1) the application submitted in support of the state search warrant established that there was a fair probability that evidence of the offenses of burglary and grand theft would be contained on Defendant's cell phone and thus there was sufficient probable cause, (2) Defendant made no substantial showing that the affiant on the state search warrant, Detective Gruber, deliberately used the wrong name for the cellphone owner in two places, and such errors are immaterial not requiring suppression, and (3) the search warrant limited the search to evidence pertaining to the offenses of burglary and grand larceny and thus was not overly broad. *Id.* Magistrate Judge Snow concluded that the state search warrant should not be suppressed. *Id.* at 19. The Parties filed no objections to this finding and the Court finds no clear error.

      ii.      *First Federal Search Warrant Issued on April 17, 2024*

Magistrate Judge Snow next found that the first federal search warrant issued on April 17, 2024 should be suppressed because (1) the omission of certain information from the affidavit submitted to Magistrate Judge Goodman in support of the search warrant was material to the judge's finding of probable cause, and was made with reckless disregard for the truth, and (2) the false statements contained in the affidavit, which Agent Haniff had not reviewed, demonstrate a reckless disregard for the truth. R&R at 19–25.

Regarding the omission of certain information from the affidavit submitted to Magistrate Judge Goodman, the R&R first points the following in the affidavit in support of the

7

first federal warrant:

> On July 14, 2022, PBSO conducted a digital forensic examination of [the Defendant's cell phone. A PBSO Detective Gruber determined included evidence related to maritime human smuggling in the Florida Keys, including specifically Whats App conversations. PBSO Detective Gruber determined that the information included in the chats related to Case No. 22-10010-CR-KING/DAMIAN (UNITED STATES v. ARTEAGA). Upon completion of the PBSO's state investigation, Detective Gruber provided a thumb drive containing the digital forensic extraction of the cellphone which contained the previously mentioned evidence to HSI.

(ECF No. 33-1 at 5). The R&R provides that this statement is misleading and false because Detective Gruber only found a few map photos, which could have some bearing on Agent Haniff's case, and he was unable to read any of the WhatsApp conversations, since he does not speak Spanish. R&R at 19. Magistrate Judge Snow further provides that the statement is misleading because it suggests Detective Gruber provided only evidence pertaining to the alien smuggling case, not the entire contents of the phone. *Id.* The R&R next points to the following paragraph in support of the first federal warrant:

> Law enforcement reviewed MOLINA's phone in connection with the Florida State case, and determined there were relevant communications between MOLINA and Gonzalez regarding possible violations of Title 8 U.S.C. § 1324 including photographs and text messages surrounding the trip to Cuba and back. Law enforcement referred the possible violation to HSI, who began investigation and determined a connection to GONZALEZ and ARTEAGA.

(ECF No. 33-1 at 6–7). Magistrate Judge Snow highlights that outside of the incorrect references to Gonzalez and Arteaga, the statement refers to "photographs and text messages," when Detective Gruber testified that he noticed only a few photos of maps of Cuba and the Lower Keys contained within some WhatsApp messages. R&R at 20. The R&R provides that since Detective Gruber did not understand Spanish, he could not characterize the text messages themselves as communications between the Defendant and one or more co-conspirators. *Id.*

Magistrate Judge Snow further finds the paragraph misleading because it does not

8

explain that the investigation conducted by HSI was an examination and translation of the messages Detective Gruber could not read. *Id.* She states that a reasonable inference would be that the investigation involved something further than "a painstaking review of the material for which Agent Haniff was seeking court authorization to search." *Id.* Magistrate Judge Snow notes that instead of just turning over the photos to Agent Haniff, Detective Gruber turned over a thumb drive with all data from Defendant's phone, which Agent Haniff used to extract a series of messages constituting a warrantless search. *Id.* Furthermore, the first search warrant did not result in the seizure of any information that was not already included in Agent Haniff's ROI. *Id.* Magistrate Judge Snow thus concludes that the warrant was used "to validate the warrantless search after the fact" and such omission of information was material to Magistrate Judge Goodman's finding of probable cause and was made with reckless disregard for the truth. *Id.* at 22.

Magistrate Judge Snow next addresses the false statements in paragraphs 15, 18, and 23 of the affidavit. The Government concedes that the statements that Gonzalez was convicted in the federal case (paragraph 15) and that there was evidence that Defendant had been in communications with Gonzalez and Arteaga, were false. *Id.* at 23. Magistrate Judge Snow provides that in an ordinary case, omission of the false statements would likely not have negated a finding of probable cause. *Id.* She notes, however, that the combined actions of the Agent and the SAUSA, where Agent Haniff was "swearing blindly to an affidavit he had not read" and that "there is no evidence establishing who authored the affidavit in support of the first search warrant," demonstrate a reckless disregard for the truth. *Id.* at 24. Magistrate Judge Snow lastly notes that to the extent there was a delay in the Government obtaining the warrant, Defendant has not alleged any prejudice resulting from the delay and thus this would not be a

basis to invalidate the warrant.  *Id.* at 25.

        iii.      *Amended Federal Search Warrant Issued on October 7, 2024*

Regarding the Amended Search Warrant, Magistrate Judge Snow notes that the Government fails to provide, nor is she aware, of any authority to support the issuing of a warrant after a search has already taken place.  *Id.*  The Amended Search Warrant was not made retroactive to the date of the first federal search warrant, and additional information in the form of voice calls were obtained from the new search.  *Id.*  Magistrate Judge Snow points to the "critical facts" that were omitted by the Amended Search Warrant, as stated above, including (1) that Agent Haniff already had searched the thumb drive which contained all of the data from Defendant's phone and had extracted pertinent conversations, which he translated and included in an ROI, and (2) that Agent Haniff had not reviewed the affidavit in support of the first federal warrant.  R&R at 25–26.  The Amended Warrant merely provided a footnote to Agent Haniff's corrected affidavit stating: "The error resulted from the AUSA making edits to the affidavit, unbeknownst to the affiant, which were consequently not reviewed by the affiant prior to execution of the warrant."  (ECF No. 33–2 at 2).  Magistrate Judge Snow considered this statement to be "misleading and false" because it implies that the edits relate solely to paragraphs 18 and 23 (corrections were not made to paragraph 15), R&R at 23, while the affidavit in support of the federal warrant was completely different than the draft Agent Haniff thought he was signing.  R&R at 25.  The R&R concludes that if the omitted facts had been included in support of the Amended Search Warrant, there would have been insufficient probable cause to issue the warrant.  *Id.* at 26

## II.    LEGAL STANDARD

The Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The Court "must consider *de novo* any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

However, a party's objections are improper if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions. *See Melillo v. United States*, No. 17-CV-80489, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018); *see also Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) ("It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.") (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)).

When the objecting party has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

11

With respect to a magistrate judge's credibility findings, "a district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1250 (11th Cir. 2007). "Rejecting credibility findings made by a magistrate judge without holding a new hearing is permissible only when there is an 'articulable basis for rejecting the magistrate's original resolution of credibility.'" *Id.* (citing *United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980)).

## III. DISCUSSION

In the R&R, Magistrate Judge Snow recommends that each of the Motions to Suppress be GRANTED. The Government objected on the grounds of (1) the plain view doctrine, (2) the inevitable discovery doctrine, (3) the independent source doctrine, and (4) that *Franks* does not require suppression. *See generally* Objs. The Court addresses each of the Government's objections in turn.

### A. Plain View Doctrine.

The Government first argues that Detective Gruber lawfully uncovered the incriminating messages, despite their being in Spanish, and the photographs on Defendant's cellphone pursuant to the plain view doctrine. Objs. at 10. "The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006).

Magistrate Judge Snow adequately addresses this argument in the R&R. Specifically,

12

as to the first element, the photographs and messages "could be plainly viewed" and Detective Gruber had "a lawful right of access" to the photographs and messages. *Smith*, 459 F.3d at 1290. As to the question of whether the incriminating character was immediately apparent, Magistrate Judge Snow provides that "[i]n and of themselves, such photographs are not incriminating. However, they arguably were evidence of Defendant's knowledge or involvement in the March 2022 smuggling venture . . . of which Detective Gruber was aware." R&R at 21.

The Court agrees with Magistrate Judge Snow's findings that the photos are not "immediately incriminating" as required under this doctrine, particularly given Detective Gruber was unable to read any of the accompanying messages. However, as Magistrate Judge Snow provides in the R&R, the inquiry does not end here. Even if the photos were immediately incriminating, Detective Gruber would lawfully be entitled to turn over the photos to Agent Haniff. He did not do so, and instead turned over a thumb drive containing all the data from Defendant's phone, which was extracted, translated, and generated into a report, thus constituting a warrantless search. The Court thus finds that the plain view doctrine is not applicable to the facts of this case, and this Objection is thus overruled.

   **B.**   **Inevitable Discovery Doctrine.**

The Government further argues that "even assuming Special Agent Haniff's subsequent entry into the Target Phone to segregate the WhatsApp messages constituted an unconstitutional search, the messages would not be subject to suppression in any event, under the inevitable discovery doctrine." Objs. at 12. The Government further states that "[h]ad Special Agent Haniff not segregated [the contents of Defendant's cellphone] himself, he would have requested them from Detective Gruber who would have lawfully provided them." *Id.*

13

"Under the inevitable discovery exception, if the prosecution can establish by a preponderance of the evidence that the information would have ultimately been recovered by lawful means, the evidence will be admissible." *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007) (citations omitted). The Eleventh Circuit further clarifies that "the mere assertion by law enforcement that the information would have been inevitably discovered is not enough. This circuit also requires the prosecution to show that 'the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct.'" *Id.* (citations omitted).

Here, the Government assumes that its conduct, which "made discovery inevitable" was wholly lawful. As set forth in the R&R, each federal search warrant was premised on misleading and factually incorrect information, after the contents of the cellphone had already been entirely searched. Furthermore, the contents of the messages related to the smuggling investigation were identified, not by "lawful means," but rather through the course of Detective Gruber's burglary investigation. The Court further does not follow the Government's argument that Detective Gruber would have been able to "lawfully provide" the segregated messages related to the smuggling investigation had Agent Haniff not segregated the messages himself, after the Government has already conceded that Detective Gruber could not understand the Spanish contents of the messages. The Court accordingly overrules this objection.

    **C.**    **Independent Source Doctrine.**

In a footnote in the Government's objections, the Government argues "assuming that Special Haniff's entry into the phone extraction for purposes of segregating the March 2022 content was an unconstitutional search, suppression is unwarranted under the independent source doctrine [because] . . . Special Agent Haniff could plainly have relied on Detective

14

Gruber's descriptions of the incriminating messages and maps, because in fact Special Agent Haniff did rely on those descriptions." Objs. 16 n.9.

"The independent source doctrine involves a two-part analysis: (1) whether, after excising from the search warrant affidavit information gained during the illegal entry, the remaining information supported a finding of probable cause, and (2) whether the officer's decision to obtain a search warrant was "prompted by" what he observed during the illegal entry." *United States v. Barron-Soto*, 820 F.3d 409, 414 (11th Cir. 2016) (citations omitted).

The Government's reasoning is circular, essentially arguing that since Agent Haniff relied on the information he received, he could have relied on that information. In either case, the Government further asserts that Agent Haniff's decision to seek a warrant was not prompted by what he witnessed in his search of the thumb drive, but rather in light of what Detective Gruber lawfully saw in the phone. Objs. 16 n.9. This statement is misleading. As the Court has already discussed, the Government's decision to obtain a search warrant was not "prompted by" what Detective Gruber observed during the illegal entry, but rather it was used to validate a search that Agent Haniff had already completed. Accordingly, this objection is overruled.

   **D.**  **Suppression under *Franks*.**

Lastly, the Government objects to the R&R on the grounds that Agent Haniff did not make any deliberately false or reckless statements or omissions in either search warrant, but even if he had, the errors were insufficient to undermine probable case. Objs. 12–13.

Turning to the first federal search warrant, the Government first argues that the following statement in the affidavit was never intended to mislead: "PBSO Detective Gruber determined that the information included in the chats related to Case No. 22:10010-CR·KING/DAMIAN (UNITED STATES v. ARTEAGA). Upon completion of the PBSO's

15

state investigation, Detective Gruber provided a thumb drive containing the digital forensic extraction of the cellphone which contained the previously mentioned evidence to HSI." *Id.* The Government also argues that even if the statement could have been clearer, the omission could have no bearing on probable cause. *Id.* at 16.

With respect to the incorrect statements in paragraphs 15, 18, and 23 of the warrant, the Government argues that such errors would have no bearing on probable cause. *Id.* at 17. The Government also indicated that since the COVID-19 pandemic, it has been the practice of the U.S. Attorney's Office for AUSAs to finalize affidavits with agents, and after the affidavits are finalized, the agents receive the signature page of the affidavit for remote processing. The Government states that in light of this practice, it was not unusual for Agent Haniff to sign the affidavit based on the assumption that there were no additional changes. *Id.* at 18–19 n.7.

*United States v. Leon*, 468 U.S. 897 (1984) governs the review of the conduct of law enforcement in obtaining and executing a search warrant. In what is referred to as the "good faith exception" to the exclusionary rule, the *Leon* Court provides that the rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved" *Id.* at 906 (internal quotation marks omitted). The *Leon* Court noted that suppression of evidence that is seized pursuant to a warrant may be proper in those instances where the officer has no reasonable grounds for believing that the warrant was properly issued. *Id*. at 921–923. The Court then recognized four exceptions where a finding of good faith reliance would not be appropriate. The relevant exception in this case is whether "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," which is described in detail

in *Franks v. Delaware*, 438 U.S. 154 (1978).

Here, the Court disagrees with the Government's assertion that the misleading statement in the warrant's initial affidavit would have no bearing on probable cause. As Magistrate Judge Snow makes clear in the R&R, the Government cannot simply validate a warrantless search by obtaining a search warrant after the search is already complete. Defendant's response to the Government's objections further highlight that the evidence adduced during Magistrate Judge Snow's evidentiary hearing clearly demonstrates that the search was performed prior to Agent Haniff ever obtaining the warrant. Objs. Resp. at 6. Specifically, Agent Haniff received the thumb drive in August 2022, segregated the information he believed related to the smuggling case including photographs and WhatsApp conversations, translated these conversation and generated a report over a year and half later, dated February 27, 2024. Agent Haniff did not seek out the warrant until April 17, 2024. That this search was conducted entirely before a warrant was sought would certainly be material to Magistrate Judge Goodman's finding of probable cause, and supports Magistrate Judge Snow's conclusion that the affidavit was made "at a minimum, with reckless disregard for the truth." R&R at 22.

As for the misstatements in the affidavit, the Court agrees with the Government that the omission of the false statements contained in paragraphs 15, 18, and 23 likely would not have negated a finding a probable cause. However, the Court is convinced by Magistrate Judge Snow's finding at the evidentiary hearing per Agent Haniff's testimony, that the affidavit in the first federal warrant was completely different from the draft Agent Haniff assumed he was signing thereby swearing blindly to an affidavit he had not read. R&R at 23. There is also nothing in the record to establish who actually drafted the affidavit in the first search warrant. *Id.* The Court further does not find the Government's statements compelling that it was "not

unusual" for Agent Haniff to not review the affidavit when signing the pertinent signature page. Regardless of such practices that encourage law enforcement to disregard their sworn statements, the agent and prosecutor's combined actions demonstrate a reckless disregard for the truth of the sworn testimony submitted to Magistrate Judge Goodman. *Id.* at 24.

Lastly, turning to the amended search warrant, the Government argues that the record fails to support that the amended search warrant did not cure the errors of the first search warrant. Objs. at 19. The Government argues that Agent Haniff disclosed in a footnote to the revised affidavit that there were errors in the initial warrant because the AUSA made "edits to the affidavit, unbeknownst to the affiant, which were consequently not reviewed by the affiant prior to execution of the warrant." Objs. at 19. The Government avers that the statement was true and plainly communicated to Magistrate Judge Goodman that Agent Haniff had not reviewed the affidavit he submitted. *Id.* However, as the R&R emphasizes, the amended search warrant still omits the critical fact that Agent Haniff had already searched the thumb drive prior to obtaining the first search warrant. Objs. Resp. at 7. Furthermore, the footnote of the affidavit states that the affidavit for the first search warrant was edited by the AUSA, while there is no evidence to support who actually authored the initial affidavit. *Id.* The Court thus finds that there would be insufficient probable cause to issue the warrant and thus the Government's objections are overruled.

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Motions, the Responses, the R&R, the Objections, the Response to the Objections, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Magistrate Judge Snow's R&R (ECF No. 48) is ADOPTED and the Government's Objections

(ECF No. 50) to Magistrate Judge Snow's Report and Recommendation are OVERRULED. Defendant's Motion to Suppress Any and All Evidence Obtained as a Result of the Search of Data/Information Copied from the Defendant's Cellular Telephone and Any and All Evidence Derived Therefrom in Violation of the Fourth Amendment to the United States Constitution and Request for Evidentiary Hearing (ECF No. 25) is GRANTED, based on the omission of facts material to a finding of probable cause.  Defendant's Motion to Suppress Any and All Evidence Obtained as a Result of the Search of Data/Information Copied from the Defendant's Cellular Telephone Pursuant to the Amended Search Warrant Issued on October 7, 2024 (ECF No. 31) is GRANTED on the same grounds.  Defendant's Motion to Strike Amended Search Warrant Issued on October 7, 2024 (ECF No. 31) is DENIED as an improper remedy.

       DONE AND ORDERED in Chambers at Miami, Florida, this *12th* day of December, 2024.

*K. M. Moore*
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:  All counsel of record